68 F.3d 461
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Ronnie LANE, Plaintiff-Appellant,
v.
RONALD LANE PIPELINE CONSTRUCTION, INCORPORATED, Defendant-Appellee.
 No. 94-1895.
 United States Court of Appeals, Fourth Circuit.
 Argued: June 5, 1995.
Decided: October 11, 1995.
 
 ARGUED: Richard D. Owen, Goodwin & Goodwin, Charleston, WV, for Appellant. Boyd Lee Warner, Waters, Warner & Harris, Clarksburg, WV, for Appellee. ON BRIEF: Joseph R. Goodwin, John David Fenwick, Goodwin & Goodwin, Charleston, WV, for Appellant.
 Before WILKINS, NIEMEYER, and WILLIAMS, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Ronnie Lane sued his employer, Ronald Lane Pipeline Construction, Inc. (a company owned by Ronnie Lane's cousin), for damages resulting from work-related injuries. Lane based his action on a provision of the West Virginia Workers' Compensation Act which denies employers immunity from tort lawsuits in certain specified circumstances. Under the Act, an employee may sue his employer when the employer intentionally injures the employee or when five statutory criteria are satisfied. See W. Va.Code Sec. 23-4-2(c)(2)(i) & (ii). The district court held that as a matter of law, Lane failed to satisfy his statutory burden under the Act, and accordingly the court entered summary judgment for his employer. Because we conclude that the testimony of Lane's expert witness created issues of material fact, we vacate the judgment and remand the case for trial.
 
 
 2
 Reporting to work on August 17, 1992, Lane was instructed to operate a bulldozer on a hillside. At that time, Lane's employer knew that the bulldozer's master brakes were not operative and that the remaining hydraulic brake system could function only when the engine was running. The regular operator of this bulldozer had previously complained on several occasions that the master brakes were bad. In addition, company maintenance records indicated that during the previous week the master brakes had been adjusted by the company mechanic, Mark Miller, and were not in working order. Miller testified that although he recommended that the brakes be replaced, there was no time to take the bulldozer off the job to perform the repair. Several other company employees, including Lane's supervisor, likewise knew of the inoperative master brakes on Lane's bulldozer.
 
 
 3
 While Lane was operating the bulldozer on an incline, it ran out of gas and the engine stalled, rendering the hydraulic brakes inoperative.
 
 
 4
 It then began drifting backwards down the hill. Before he could jump from the rolling bulldozer, Lane was thrown from it. He suffered a broken arm, six broken ribs, an injured shoulder, and multiple bruises as a result of his fall.
 
 
 5
 Lane filed this diversity action against his employer under Sec. 23-4-2(c)(2)(ii) of the West Virginia Workers' Compensation Act, which permits employees to recover damages from their employer for on-the-job injuries if five statutory requirements are met. That section provides in particular that an employer loses its immunity to tort lawsuits if the injured employee establishes:
 
 
 6
 (A) That a specific unsafe working condition existed in the workplace which presented a high degree of risk and a strong probability of serious injury or death;
 
 
 7
 (B) That the employer had a subjective realization and an appreciation of the existence of such specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death presented by such specific unsafe working condition;
 
 
 8
 (C) That such specific unsafe working condition was a violation of a state or federal safety statute, rule or regulation, whether cited or not, or of a commonly accepted and well-known safety standard within the industry or business of such employer, which statute, rule, regulation or standard was specifically applicable to the particular work and working condition involved, as contrasted with a statute, rule, regulation or standard generally requiring safe workplaces, equipment or working conditions;
 
 
 9
 (D) That notwithstanding the existence of the facts set forth in subparagraphs (A) through (C) hereof, such employer nevertheless thereafter exposed an employee to such specific unsafe working condition intentionally; and (E) That such employee so exposed suffered serious injury or death as a direct and proximate result of such specific unsafe working condition.
 
 
 10
 W. Va.Code Sec. 23-4-2(c)(2)(ii).
 
 
 11
 In its motion for summary judgment, Lane's employer conceded that Lane had presented facts sufficient to defeat its motion on the requirements set out in subsections (A),(B),(D), and (E). It contended, however, that Lane failed to present facts sufficient to meet the requirements of subsection (C), which requires that an employee establish that the unsafe working condition at issue constituted a violation of a state or federal safety statute or a violation of a commonly accepted, well-known, and specifically applicable safety standard.
 
 
 12
 In his proof on this point, Lane offered the testimony of an expert witness, Avrid Johnson. It was Johnson's opinion that the existence of malfunctioning master brakes on a bulldozer which was to be operated on hilly terrain, violated a commonly accepted, well-known, and specifically applicable safety standard in the construction industry. Johnson acknowledged that he could not find any written standard,* but nevertheless concluded that use of faulty equipment on hilly terrain violated a "commonly accepted, well-known" safety standard. Johnson, a former construction manager and heavy equipment salesman, testified at his deposition as follows:
 
 
 13
 Q. Do you know whether or not the operating [of] this particular piece of equipment on this particular day of the accident would have been a violation of any rule or regulation or industry standard?
 
 
 14
 A. Well, I could find no printed standard that directly addresses that question. But I would say that the industry standard and the norm for anyone would be to--for any company that it would be obvious that you would have to have your equipment in good working order including all the operational brakes for working on this type of hillside location. So to that extent I would say it's the industry standard, yes. Putting it a different way, I know of no one who would put their people on a tractor on these hillsides that did not have all the brake systems operational.
 
 
 15
 * * *
 
 
 16
 I don't believe any responsible company would put their people on a dozer like this that didn't have fully functional brakes given the hillside jobs that they did day after day.
 
 
 17
 * * * Society of Automotive Engineers Recommended Practices:
 
 
 18
 I think experienced construction people would say and ordinary lay men would say that was a dangerous place to be operating without all your brakes.
 
 
 19
 * * *
 
 
 20
 Q. Do you have an opinion as to whether the existence of a malfunctioning master brake on a dozer is [a] violation of a commonly accepted and well-known safety standard in the construction industry?
 
 
 21
 A. Yes, I have an opinion.
 
 
 22
 Q. What is your opinion?
 
 
 23
 A. I think it does violate accepted practices and customs in the industry.
 
 
 24
 On the issue of whether that safety standard was "specifically applicable to the particular work and working condition involved, " see W. Va.Code Sec. 24-4-2(c)(2)(ii)(C) (emphasis added), Johnson testified:
 
 
 25
 Q. It's a general standard, is that what you're talking about, with regard to safety?
 
 
 26
 A. I don't know how to answer ... whether it's general. It's general to the extent that all things should be working all the time for safety, but it's specific in this case for this circumstance of the brakes not working on hillside work.
 
 
 27
 Q. I guess the reason I am asking if that's a general standard is you can't point me to a specific standard anywhere that says the brakes on the master brakes on a dozer should be working on a hillside with a grade X or larger?
 
 
 28
 A. Right, there is no such specific standard, but it certainly is a specific need for this circumstance. Granting the employer's summary judgment motion, the district court concluded that Lane's expert failed to demonstrate a violation of a well-known industry safety standard. The court stated:
 
 
 29
 Here, we are shown no written or well-known standard regarding brakes, but rather only a common sense theory that equipment should be in good working order.... Consequently, this Court finds the requirement under W. Va.Code Sec. 24-4-2(c)(2)(ii)(C) is not established.
 
 
 30
 We believe that the district court overlooked parts of Johnson's testimony and failed to give that testimony the weight required by applicable West Virginia case law. Johnson testified explicitly that experienced construction people "would say that[a hillside job] was a dangerous place to be operating without all your brakes." He went on to state that it was his opinion that hillside use of a bulldozer with inoperative master brakes "does violate the accepted practices and customs in the industry." While he was unable to point to a written standard, a written standard is not required under West Virginia law. On the contrary, it has been held that the standard may be established through the testimony of an expert witness. See Mayles v. Shoney's, Inc., 405 S.E.2d 15 (W.Va.1990).
 
 
 31
 In Mayles, the Supreme Court of Appeals of West Virginia considered whether a restaurant employee, injured while carrying an open container of hot grease down a grassy slope, had introduced sufficient evidence to strip his employer of Workers' Compensation immunity under Sec. 23-4-2(c)(2)(ii). The court acknowledged that plaintiff's expert had testified that several generally applicable OSHA regulations had been violated by the employee's working conditions involving the disposal of hot grease. However, it concluded that none was sufficiently specific to meet the requirement of the West Virginia Workers' Compensation Act: "the only possible[statutory] violation which occurred was [of] the general duty clause which guarantees each worker a safe and healthful place, but a violation of this regulation alone is insufficient to prove the requirement of the statute." 405 S.E.2d at 22. The court then considered whether plaintiff had established a violation of a non-statutory, commonly accepted, wellknown, and specifically applicable safety standard. Explaining what becomes dispositive of the issue before us, the West Virginia Supreme Court of Appeals stated:
 
 
 32
 Significantly, the appellee's expert further testified that in addition to the specific OSHA violations, the grease disposal practice was also in violation of a commonly accepted and well-known safety standard within the industry or business of the employer. Specifically, the appellee's testimony was that based on his background in the restaurant industry "[t]he industry standard for disposing of the hot grease would have been to drain the grease into a container which could have been tightly sealed and could have transmitted or transferred that hot grease to another container without the possibility of the hot grease escaping the container." The appellant put on no evidence to contradict that this was the standard for the restaurant industry. Consequently, we find that the appellee sufficiently proved this statutory requirement.
 
 
 33
 Id. (footnote omitted).
 
 
 34
 The testimony which the court in Mayles recognized as sufficient to meet the requirements of the West Virginia's Worker's Compensation Act is similar to the type, quantity, and quality of testimony offered by Lane's expert witness in this case. Having offered expert testimony which, if believed, would meet the requirements of W. Va.Code Sec. 24-4-2(c)(2)(ii)(C), Lane created at least a question of fact that cannot be resolved on a motion for summary judgment.
 
 
 35
 Accordingly, we vacate the summary judgment entered by the district court and remand this case for further proceedings.
 
 VACATED AND REMANDED
 
 
 *
 But see the following OSHA regulation:
 
 
 [29]
 C.F.R. Sec. 1926.602 Material handling equipment
 (a) Earthmoving equipment; General
 (1) These rules apply to the following types of earthmoving equipment: scrapers, loaders, crawler or wheel tractors, bulldozers, off-highway trucks, graders, agricultural and industrial tractors, and similar equipment.
 * * *
 (4) Brakes. All earthmoving equipment mentioned in this Sec. 1926.602(a) shall have a service braking system capable of stopping and holding the equipment fully loaded, as specified in Society of Automotive Engineers SAE-J237, Loader Dozer-1971, J236, Graders-1971, and J319b, Scrapers-1971. Brake systems for self-propelled rubber-tired off-highway equipment manufactured after January 1, 1972 shall meet the applicable minimum performance criteria set forth in the following
 ...
 Front End Loaders and Dozers ..... .... SAE J237-1971.
 (Emphasis added). By observing the existence of this regulation, we give no opinion on whether it fulfills the requirements of W. Va.Code Sec. 23-4-2(c)(2)(ii)(C).